FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 31, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNY R.,<br><br>                  Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                  Defendant. | NO:  1:18-CV-3070-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is granted and Defendant's Motion, ECF No. 13, is denied.

/ / /

/ / /

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

Plaintiff Jenny R.[1] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on February 26, 2009, alleging an onset date of May 1, 2008. Tr. 177-83, 180-83. Benefits were denied initially, Tr. 85-93, and upon reconsideration, Tr. 97-99, 102-03. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 22, 2011. Tr. 44-78. On May 9, 2011, the ALJ issued an unfavorable decision, Tr. 17-29, and on January 24, 2012, the Appeals Council denied review. Tr. 1-5. Plaintiff filed a complaint in the U.S. District Court for the Eastern District of Washington and on October 7, 2013, the Honorable Fred Van Sickle issued an order affirming the decision of the ALJ. Tr. 807-29. Plaintiff appealed to the Ninth Circuit Court of Appeals and on December 17, 2015, the Court of Appeals reversed and remanded the case for additional proceedings. Tr. 830-34.

A second hearing was held on January 6, 2017. Tr. 742-70. On February 28, 2018, the ALJ issued another unfavorable decision. Tr. 698-713. The Appeals Council did not assume jurisdiction and the ALJ's decision became the final

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

decision of the Commissioner after remand.  20 C.F.R. 404.984(a), (d); 416.1484(a), (d).  The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1977 and was 39 years old at the time of the hearing.  Tr. 177.  She was in special education and attended school through the eighth grade.  Tr. 749.  She has work experience as a home healthcare provider, a medical records clerk, a childcare provider, and as a cashier.  Tr. 761.  She has difficulty reading.  Tr. 749.  She has headaches four to five nights each week.  Tr. 751.  She has back pain.  Tr. 751.  Her legs give out or get wobbly if she stands for too long.  Tr. 752-53, 756.  She has sleep apnea and is exhausted during the day.  Tr. 753.  She had carpal tunnel surgery on her right hand but it did not fix her problems.  Tr. 753-54.  She has anxiety which affects her ability to drive.  Tr. 755-56.  She has a hard time leaving her home due to anxiety.  Tr. 756.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since May 1, 2008, the alleged onset date. Tr. 701. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disk disease, obesity, headaches, history of carpal tunnel syndrome, and depression. Tr. 701. At

step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 702.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, but with the following additional limitations:

> Although able to sit for 6 hours in an 8-hour workday, she is limited to standing/walking for 2 hours. On an occasional basis, she can balance, stoop, kneel, crouch, and crawl, but she cannot perform any climbing of stairs or ladders. The claimant needs to avoid concentrated exposure to hazards, humidity, wetness, pulmonary irritants, temperature excesses, vibrations, and excessive noise, which is defined as the avoidance of loud noise. Additionally, the claimant is limited to unskilled work with a restriction to simple instructions with few changes and simple work place decisions.

Tr. 704.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 711. After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as electronics worker, small products assembler, and electrical accessory assembler. Tr. 712. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2008, through the date of the decision. Tr. 713.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

        1.      Whether the ALJ properly evaluated Plaintiff's symptom complaints;

        2.      Whether the ALJ properly considered the medical opinion evidence; and

        3.      Whether the ALJ made a legally sufficient step five finding. ECF No. 12 at 5.

**DISCUSSION**

**A.    Symptom Complaints**

Plaintiff contends the ALJ improperly considered her symptom testimony. ECF No. 12 at 23-24. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ's only finding regarding Plaintiff's symptoms complaints is that "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the medical evidence." Tr. 705. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995). The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011). However, an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Because the ALJ gave no other reasons for rejecting Plaintiff's symptom claims, this Court concludes the ALJ's finding is not legally sufficient.

Defendant suggests there is a distinction between the ALJ's finding that the evidence is "inconsistent" with Plaintiff's symptom claims and a finding that there is a lack of objective evidence supporting Plaintiff's symptom claims. ECF No. 13 at 37. However, the inconsistency cited by the Defendant regarding Plaintiff's

physical problems is that despite her claim that she has difficulty standing because her legs give out, "the objective evidence showed that Plaintiff had full strength in her arms and legs." ECF No. 13 at 8 (citing Tr. 448, 752-53). The purported "inconsistency" is the same as a finding that there is a lack of supporting objective evidence, which may not by itself be the basis for finding Plaintiff's symptom complaints unreliable. *See Rollins*, 261 F.3d at 851.

Additionally, after finding that Plaintiff's symptom claims are inconsistent with the medical evidence, the ALJ proceeded to summarize the medical evidence which is the basis for the RFC finding. Tr. 705-07. A summary of the evidence supporting the RFC finding must contain some analysis or reasoning for the Court to determine whether the ALJ's conclusions were supported by substantial evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). Furthermore, a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Here, the ALJ's evidentiary summary contains no analysis or reasoning for the Court to consider. As a result, the ALJ's finding regarding Plaintiff's symptom complaints is legally insufficient.

**B.    Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinions of Ovidio Demiar, PA; Jung Lim, M.D., Ph.D.; and Mary Pine, P.A. ECF No. 13 at 32-34.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[2] The ALJ is required to consider evidence from "other sources," but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1104.

1.    *Jung Lim, M.D., Ph.D.*

In December 2013, Dr. Lim completed a "Documentation Request Form for Medical or Disability Condition." Tr. 1008-10. He diagnosed lower back pain and chronic headaches. Tr. 1008. He opined Plaintiff has difficulty lifting heavy objects and standing or sitting for prolonged periods, and checked a box indicating that Plaintiff is limited to sedentary work. Tr. 1008-09.

_____

[2] Effective March 27, 2017, the definition of an "acceptable medical source" changed to include some sources previously considered to be "other" sources. *See* 20 C.F.R. §§ 404.1520, 416.920 (2017). However, for licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants, the change applies "only with respect to claims filed . . . on or after March 27, 2017"). 20 C.F.R. §§ 404.1502(a)(6)-(8), 416.902(a)(6)-(8) (2017).

Because Dr. Lim's opinion was contradicted by the opinion of Norman Staley, M.D., Tr. 450-57, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Lim's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ gave one reason for giving Dr. Lim's assessment little weight: "[i]n check marking answers on this form, Dr. [L]im did not provide objective medical evidence to support the answers from the check marks." Tr. 710. An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17. The ALJ is correct that Dr. Lim did not note any supporting objective findings; in fact, Dr. Lim checked a box on the form indicating his diagnosis is not supported by testing or lab reports. Tr. 1008. Plaintiff contends that that Dr. Lim's exam note from October 2012 supports the limitations assessed. ECF No. 12 at 18-19. Dr. Lim noted a "very antalgic gait" on exam and a January 2011 nerve conduction study indicating bilateral median neuropathy. Tr. 2327; *see also* Tr. 2330-32. The ALJ did not address or discuss these findings and whether they are sufficient to support Dr. Lim's conclusions. Since this matter is remanded on other grounds, the ALJ should clarify the assessment of Dr. Lim's treatment notes and reconsider Dr. Lim's opinion.

### 2. *Ovidio Demiar, PA-C*

Mr. Demiar, a treating physician assistant, gave five opinions regarding Plaintiff's ability to work during the period from July 2010 to March 2013. Tr. 505-07, 649-50, 651-52, 1002-04, 1005-07. He consistently indicated limitations due to back pain and variously noted limitations due to shoulder pain, sinusitis, headaches, and carpal tunnel syndrome. In July 2010 he opined Plaintiff was severely limited, defined as unable to lift two pounds or unable to stand or walk (Tr. 506); in December 2010 he opined Plaintiff was limited to sedentary work (Tr. 649); in January 2011 he opined that work would aggravate Plaintiff's back pain, that she would miss four or more days per month due to symptoms; and that her pain prevented her from working full days (Tr. 652); and in July 2012 and March 2013, he again opined that Plaintiff was severely limited, meaning she was unable to lift two pounds or unable to stand or walk (Tr. 1003 1006).

As a physician assistant, Mr. Demiar is an "other source" under the regulations.[3] 20 C.F.R. §§ 404.1513, 416.913(d) (2013). Thus, the ALJ was

---

[3] In this case, the opinions of the physician assistants are the opinions of "other sources" not entitled to the same deference as an "acceptable medical source." *Molina*, 674 F.3d at 1104. The ALJ is required to consider evidence from "other sources," but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so." *Id.*

required to cite germane reasons for rejecting the opinion. *See Molina*, 674 F.3d at 1104.

The ALJ gave the same reason for giving little weight to all of Mr. Demiar's opinions: "the physician assistant does not provide reference to objective medical findings to support his conclusions of limitations." Tr. 710. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The ALJ is correct that Mr. Demiar's July 2010 and December 2010 opinions do not reference objective findings. Tr. 505-07, 649-50; *see also* Tr. 659, 663. Mr. Demiar checked a box on the December 2010 form indicating that diagnoses of lower back pain with right leg radiculopathy and persistent headaches are supported by "testing, lab reports, etc.," but office visits notes from the same date indicate that Plaintiff was still waiting for an MRI and all exam findings noted were normal. Tr. 649, 659. However, in his January 2011 opinion, Mr. Demiar noted an MRI of Plaintiff's lumbar spine showed arthrosis and an MRI of Plaintiff's head showed chronic sinusitis. Tr. 651. MRI findings were also noted in Mr. Demiar's July 2012 opinion. Tr. 1002, 1005-07. Additionally, Plaintiff

cites a February 2013 note indicating nerve conduction studies support the finding of carpal tunnel syndrome in the March 2013 opinion. Tr. 1006, 2228.

Defendant notes that in some instances Mr. Demiar identified imaging supporting the diagnoses listed but suggests that imaging alone does not support the level of limitations assessed. ECF No. 13 at 4. Defendant observes that Plaintiff's self-reported pain is the basis noted for Mr. Demiar's conclusions. ECF No. 13 at 4-5 (citing Tr. 649, 652, 654, 675, 1002, 1005). An ALJ may reject an opinion that does not indicate how a claimant's symptoms translate into specific functional deficits which preclude work activity. *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir.1999). The Court agrees that the ALJ reasonably found Mr. Demiar's assessment of limitations are not supported by reference to objective findings and this is a specific, legitimate reason for rejecting the opinions.

### 3. Mary Pine, PA-C

Ms. Pine, a treating physician assistant, gave five opinions regarding Plaintiff's ability to work during the period from February 2015 to October 2016. Tr. 1012-14, 1018-20, 1023-25, 1027-30, 1032-33. Ms. Pine noted various diagnoses, including migraine headaches, chronic lower back pain, major depression anxiety, mass in cervix, Takayasu arthritis, hypertension, vitamin D deficiency, PTSD/depression, morbid obesity, hyperlipidemia, coronary artery disease, generalized anxiety disorder, degenerative joint disease, and anemia. Tr.

1012, 1018, 1023, 1027, 1032.  In February 2015, Ms. Pine opined that Plaintiff

was limited to sedentary work; in April and September 2015 and September 2016,

she opined that Plaintiff was severely limited and unable to work.  Tr. 1014, 1019,

1024, 1029.  In October 2016, Ms. Pine opined Plaintiff would miss four or more

days of work per month.  Tr. 1033.

As a physician assistant, Ms. Pine is an "other source" under the regulations.

20 C.F.R. §§ 404.1513, 416.913(d) (2013).  Thus, the ALJ was required to cite

germane reasons for rejecting the opinions.  *See Molina*, 674 F.3d at 1104.

The ALJ gave little weight to Ms. Pine's opinions.  Tr. 710.  First, the ALJ

found Ms. Pine did not indicate the basis for the diagnoses listed and is not

qualified to make diagnoses.  An "other source" opinion may not establish a

diagnosis.  *See* S.S.R. 06-3p; 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

However, the regulations require an ALJ consider observations by other sources as

to how an impairment affects a claimant's ability to work.  20 C.F.R. §

404.1513(e)(2), 416.913(e)(2) (2013).  As Plaintiff observes, the ALJ accepted

diagnoses established by other medical sources and listed by Ms. Pine as severe

impairments, including degenerative disc disease, obesity, headaches, and

depression.  ECF No. 12 at 22; Tr. 701.  Furthermore, while this might be a basis

for rejecting certain diagnoses, it is not a germane reason for rejecting Ms. Pine's

opinions regarding the impact of Plaintiff's impairments on her ability to work.

*See Molina*, 674 F.3d at 1104; 20 C.F.R. § 404.1513(e)(2), 416.913(e)(2) (2013).

Second, the ALJ found Ms. Pine did not provide objective medical evidence to support "her conclusions of interference with work attendance." Tr. 710. An ALJ may discredit a treating source opinion that is unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Even if the ALJ is correct, the reference to Ms. Pine's October 2016 opinion that Plaintiff would miss more than four days of work per month (Tr. 1033) is inadequate to reject Ms. Pine's various other opinions that she is limited to sedentary work or severely limited and unable to work. Tr. 710. As such, this is not a germane reason for rejecting the February, April, and September 2015 opinions or the September 2016 opinions which do not specifically address work attendance. Thus, the ALJ failed to adequately address Ms. Pine's opinions.

## C.    Step Five

Plaintiff contends the ALJ erred in considering the RFC and the vocational expert's testimony at step five. ECF No. 12 at 9-15. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, she can do other work. *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The

vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101.

The ALJ posed a hypothetical to the vocational expert including a limitation of "no climbing at all, no stairs or ladders."[4] Tr. 762. The vocational expert testified that jobs exist in the national economy consistent with that hypothetical and the ALJ's step five finding is based on that testimony. Tr. 712, 763. When Plaintiff's counsel asked specifically about a limitation to "no stairs or ramps," the vocational expert stated, "I can't state that that would eliminate all employment, but it would certainly eliminate the majority of it." Tr. 766. When asked if the jobs previously identified would be eliminated, the vocational expert testified, "[i]t would eliminate the majority of them . . . I would have to guess at that and I'm not comfortable doing that . . . But I know it would eliminate the majority of the jobs . . . I would say probably a 90 percent reduction." Tr. 766. The ALJ's step five finding does not mention a reduction in the jobs available or otherwise specifically address whether the limitation on climbing includes ramps. Tr. 712-13.

First, Plaintiff contends that the RFC finding that Plaintiff "cannot perform any climbing of stairs or ladders" should be read to prohibit all types of climbing

---

[4] The RFC finding indicates Plaintiff "cannot perform any climbing of stairs or ladders." Tr. 704.

including ramps.  ECF No. 12 at 11.  According to Plaintiff, this is supported by the Social Security Administration Physical Residual Functional Capacity Assessment form completed by Dr. Staley which lists postural activities of climbing, balancing, stooping, kneeling, crouching, and crawling alongside checkboxes for assessing limitations of "frequently," "occasionally," or "never." ECF No. 12 at 11 (citing Tr. 452).  Climbing is broken into two subcategories: ramps/stairs and ladder/rope/scaffolds.  Tr. 452.  Plaintiff contends this shows "SSA considers the ability to climb stairs and ramps together."  ECF No. 12 at 11. Dr. Staley indicated Plaintiff should never engage in either subcategory of climbing.  Tr. 452.

Plaintiff further asserts the RFC finding means Plaintiff cannot climb ramps because the ALJ summarized Dr. Staley's opinion as indicating that Plaintiff is "unable to climb ramps/stairs," and found Dr. Staley's opinion was "strongly supported by the evidentiary record in the areas of exertional, postural and environmental activities."[5]  ECF No. 12 at 12 (quoting Tr. 708).  Additionally,

---

[5] The ALJ's finding was actually somewhat qualified since the ALJ wrote, *"For the most part*, the assessments [of Dr. Staley and another reviewing physician, Charles Wolfe, M.D.] are strongly supported by the evidentiary record in the areas of exertional, postural and environmental activities."  Tr. 708 (emphasis added).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

Plaintiff contends the opinion of James Opara, M.D., which was partially credited by the ALJ (Tr. 708) similarly supports an inability to climb ramps since Dr. Opara stated Plaintiff "should never climb" and opined that "[w]orking at heights is limited." ECF No. 12 at 12 (citing Tr. 448-49).

Second, Plaintiff contends the vocational expert's testimony is inadequate because it is based on a guess. ECF No. 12 at13-14. Indeed, the vocational expert first testified that a limitation eliminating "any climbing of stairs or ladders" is consistent with a significant number of jobs in the national economy; then testified he would not want to guess at the reduction in jobs if climbing ramps is eliminated from the hypothetical; and then proceeded to offer a guess that there is a 90 percent reduction in jobs based on the limitation of no climbing ramps or stairs. Tr. 766. This creates an ambiguity in the evidence. Since the burden shifts to the Commissioner at step five, the ALJ's failure to address the ambiguity means the step five finding is inadequate. On remand, the ALJ should clarify the RFC finding regarding climbing and ramps and, if necessary, obtain additional vocational expert testimony about reduction in jobs, if any.

Defendant contends the vocational expert was "initially reluctant" to state the reduction in jobs, but that any error is harmless, since a 90 percent reduction in

Nonetheless, the ALJ did not distinguish the ability to climb ramps from other types of climbing in evaluating Dr. Staley's and Dr. Wolfe's opinions.

the jobs identified would still result in a significant number of jobs in the national economy that Plaintiff can perform. ECF No. 13 at 2-3. The vocational expert identified 973,000 available jobs if the three jobs identified are combined: electronics worker – 408,000 jobs; small products assembler – 500,000 jobs; and electrical accessory assembler – 65,000 jobs. A 90 percent reduction in 973,000 total jobs available reduces the number of available jobs to 10 percent of the total, or 97,300. While there is no bright-line rule for determining the number of jobs that qualify as a "significant" or "substantial" number in the national or local economy, the Ninth Circuit has found 25,000 jobs to be a significant number. *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528-29 (9th Cir. 2014). Thus, 97,300 is a reasonably significant number of jobs available in the national economy. Nonetheless, because the ALJ did not address ramps or the ambiguity in the vocational expert's testimony, and because this matter is remanded on other grounds, the issue should be reconsidered on remand.

Plaintiff additionally argues the vocational expert did not provide the correct number of jobs for the occupations identified. ECF No. 12 at 14. A vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-18. Plaintiff cites a U.S. Department of Labor website and "Job Browser Pro" to challenge the job data contained in the vocational expert's testimony. ECF No. 12 at 14; ECF No. 12-1; ECF No. 18 at 3-8. However, "when a claimant fails entirely to challenge a vocational expert's job

numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Although Plaintiff asserts she "attacked the job numbers at the hearing," the Court finds no such challenge to in the hearing transcript.[6] Tr. 765-67. Thus, this line of argument was waived.

Furthermore, Courts considering similar arguments have found that lay assessment of raw data does not rebut a vocational expert's opinion. *Kirby v. Berryhill*, No. SA CV 18-497-E, 2018 WL 4927107, at *5 (C.D. Cal. Oct. 10, 2018) (citing e.g., *Reguero v. Berryhill*, 2018 WL 1804678, at *5-6 (E.D. Cal. Apr. 13, 2018) (ALJ was entitled to rely on vocational expert's estimation of job numbers and appropriately resolved any ambiguity in the expert's testimony; the claimant argued unsuccessfully that expert's job estimates for three identified jobs were "aggregate" and therefore should apply to the entire category of DOT occupations in which the three jobs fell); *Munroe v. Colvin*, 2014 WL 6660369, at *5, 9-10 (N.D. Cal. Nov. 24, 2014) (rejecting argument that vocational expert's estimated 500,000 garment sorter jobs should have been reduced to only 650 jobs, representing a subset of jobs within a larger category of "production worker"

---

[6] Plaintiff's questions about the reduction in job numbers if ramps were prohibited are distinguishable from a challenge to the job numbers provided by the vocational expert. Tr. 765-67.

occupations; court observed that the plaintiff was not a vocational expert and there was no indication she was qualified to assess the data); *see also Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. §§ 404.1566(d), 416.966(d), and the data therefrom served only to show that evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.") (internal footnote omitted); *Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (noting cases that "uniformly rejected" arguments that Job Browser Pro data undermined vocational experts' testimony)).

Notwithstanding, because remand is necessary based on other issues discussed *supra*, on remand the ALJ should clarify whether ramps are included in the RFC limitation on climbing. If necessary, the ALJ should make a new step five finding after clarifying the vocational expert's testimony regarding the reduction, if any, in the number of jobs available due to the limitations in the RFC.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

The ALJ must reconsider Plaintiff's symptom complaints and the opinions of Ms. Pine. The ALJ should also reevaluate the opinion of Dr. Lim. The ALJ should clarify the RFC finding regarding the limitation on climbing ramps and, if necessary, clarify the vocational expert's testimony regarding any reduction in the number of jobs available. Accordingly,

    1. Plaintiff's Motion for Summary Judgment, **ECF No. 12,** is **GRANTED**.

    2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

    3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

    **IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

    **DATED** May 31, 2019.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge